# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

| | | |
|---|---|---|
| ERIC S. MCCOY, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 1:11-CV-18-RBC** |
| | ) | |
| CITY OF FORT WAYNE, | ) | |
| DARRICK ENGLEMAN, JEAN | ) | |
| GIGLI, ROBERT THEURER, | ) | |
| MARK K. WATTERS, KURT | ) | |
| FRANCEUS, SANDRA KERSCHNER, | ) | |
| and MARK BROWN, | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

## I. INTRODUCTION

Eric McCoy, a prisoner confined at the Westville Correctional Facility, filed a complaint

pursuant to 42 U.S.C. § 1983 naming the City of Fort Wayne, the Fort Wayne Police

Department, Detective Darrick Engelman, and police officers Brian Martins, Jean Gigli, Robert

Theurer, Mark Watters, Kurt Franceus, Sandra Kerschner, Mark Brown, and J. Weigmann as

Defendants.  McCoy alleged that Defendants Engelman, Gigli, and Theurer falsely arrested him

on March 26, 2010, during a controlled drug purchase; that Defendant Engelman supported his

affidavit for a search warrant of McCoy's home with facts he knew to be false; and that

Defendants Watters, Franceus, Kerschner, and Brown conducted a search of his home without

probable cause that resulted in the seizure of 528 grams of cocaine.  McCoy also alleged that the

Defendants' actions violated Indiana law.

The Court screened the complaint pursuant to 28 U.S.C. § 1915A and granted McCoy

leave to proceed on his claims that he was arrested without probable cause, that Engelman

submitted false statements to obtain the search warrant for his home, and that police officers executed a search warrant they knew to be obtained under false pretenses as well as his supplemental state law claims. (Docket # 15 at 7-8.)  The Court dismissed the § 1983 claim against the City of Fort Wayne and dismissed the Fort Wayne Police Department and Defendants Martins and Weigmann. (Docket # 15 at 8.)

The Defendants have moved for summary judgment (Docket # 46), pursuant to FED. R. CIV. P. 56, arguing that McCoy's § 1983 claims are barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477, 486-487 (1994), that his federal claims are also barred by the collateral estoppel doctrine, that his false arrest claim is barred because there was probable cause for his arrest, and that his state law claims are barred because he did not file a timely notice of tort claim.  McCoy has filed a cross-motion for summary judgment (Docket # 138), arguing that the Defendants "did knowingly and willingly, act and conspire to injure, damage, harm, and deprive [ ] Plaintiff of Equal Protection of the Law, violate his civil rights under . . . Amendments Four and Fourteenth [sic], and to violate his rights secured under Indiana State" law (Docket # 138 at 1).  For the following reasons, the Defendants' motion for summary judgment will be GRANTED, and the Plaintiff's motion for summary judgment will be DENIED.  The supplemental state law claims will be DISMISSED without prejudice to refiling in state court.

## II. FACTUAL BACKGROUND

In support of their summary judgment motion, the Defendants submit the affidavits[1] of

---

[1] The original affidavits of Defendants Gigli (Docket # 47-2) and Theurer (Docket # 47-3) were subsequently replaced by amended affidavits (Docket # 83 and 84).  In his Motion for Sanctions (Docket # 105), McCoy essentially argues that the amended affidavits should be stricken as a sanction for filing the original affidavits, which appear to contradict the amended affidavits, and therefore, according to McCoy, must have been fraudulently submitted to the Court.  The amended affidavits, however, are significantly more helpful to McCoy than the original affidavits.  The original affidavits state that Officer Gigli saw a plastic bag of white powder in plain view on the floor of McCoy's car *before* McCoy was arrested. (Gigli Aff. ¶ 5; Theurer Aff. ¶ 5.)  On the other hand, the

Defendants Engelman (Docket # 47-1), Gigli (Docket # 83), and Theurer (Docket # 84) and

portions of McCoy's deposition (Docket # 47-4 at 1-8). The Defendants also submit McCoy's

plea agreement (Docket # 47-4 at 9-10), his motion to suppress evidence (Docket # 47-4 at 11-

12), and a copy of the state trial court's order denying McCoy's motion to reconsider its denial

of his motion to suppress evidence (Docket # 47-4 at 13). In support of his motion for summary

judgment, McCoy submits his own affidavit (Docket # 139), which contains both facts asserted

by McCoy and legal arguments based on these facts.

  The parties' submissions establish that on March 19, 2010, during the course of a

narcotics investigation, Detective Engelman utilized a confidential informant ("CI") to make a

"controlled" buy of cocaine from Marvin Johnson. (Engelman Aff. ¶ 2.) During this controlled

buy, an individual, later determined to be McCoy, accompanied Johnson.[2] (Engelman Aff. ¶ 3.)

  On March 26, 2010, Detective Engelman arranged for another controlled purchase of

cocaine from Johnson. (Engelman Aff. ¶ 5.) McCoy again accompanied Johnson (Engelman

---

amended affidavits aver that Officer Gigli saw this bag of white powder after Johnson and McCoy were already in custody and during an inventory search of the vehicle. (Gigli Am. Aff. ¶ 8; Theurer Am. Aff. ¶ 8.) That Officer Gigli discovered the white powder *after* McCoy was arrested, as stated in the amended affidavits, is more favorable to McCoy than the statements in the original affidavit because the white powder found after McCoy's arrest cannot then factor into a determination of whether probable cause existed for his arrest. *See United States v. Reed*, 443 F.3d 600, 603 (7th Cir. 2006) (noting that subsequent evidence of guilt cannot validate the probable cause determination and that courts must focus on the real world situation as *known to the officer at that time*). When Officer Gigli actually saw the bag of white powder seems to be the only discrepancy between the original and amended affidavits. Therefore, the Court will deny McCoy's request to strike the amended affidavits as a sanction.

  [2] Although the Defendants do not argue the point and the Court does not rely on it, according to Detective Engelman's narrative report of the investigation surrounding this first controlled buy produced during discovery as Docket # 54-1 at 1-4, on March 19, 2010, the CI called a telephone number to set up a controlled buy, but no one answered (Docket # 54-1 at 3). Johnson called the CI back from that number, told the CI to meet him at a gas station, and then advised the CI that he was waiting for his supplier to arrive with the cocaine. (Docket # 54-1 at 3.) Shortly thereafter, undercover surveillance detectives advised that they observed a yellow Oldsmobile driven by an unknown African American male arrive at and enter Johnson's residence. (Docket # 54-1 at 3.) Johnson and the unidentified male exited the residence a short time later, got into a black Mitsubishi, and then went to consummate the drug deal. (Docket # 54-1 at 3.) The yellow Oldsmobile was registered to McCoy (Docket # 54-1 at 2, 10), and the man accompanying Johnson was determined to be McCoy (*see* Docket # 47-1 at 8; Docket # 54-1 at 1).

Aff. ¶ 6) and was the driver of the vehicle in which they arrived at the meet site (Gigli Am. Aff. ¶ 7). Once Johnson and McCoy arrived, Detective Engelman instructed Officers Gigli and Theurer to stop the vehicle and arrest both men. (Engelman Aff. ¶ 7; Gigli Am. Aff. ¶ 4; Theurer Am. Aff. ¶ 4.) Officer Gigli states that, after Johnson and McCoy had been taken into custody, he saw cocaine in plain view on the floor of McCoy's vehicle during an inventory search of the vehicle. (Gigli Am. Aff. ¶ 8.) In his affidavit, McCoy does not dispute the presence of the cocaine, but speculates that Johnson must have "discarded" it there, and that both Gigli and Theurer should have realized that fact.[3] (McCoy Aff. at 10-12.)

The Defendants assert that Officer Gigli arrested McCoy and Officer Theurer arrested Johnson. (Gigli Am. Aff. ¶¶ 6-7.) While McCoy contests this assertion "in light of newly discovered evidence" (McCoy Aff. at 14), he does not dispute that he was arrested on March 26, 2010, on drug related charges. The question McCoy raises—which officer actually arrested him—is irrelevant for summary judgment purposes since he maintains that both officers were involved in his arrest.

Johnson told the arresting officers that McCoy had provided him with the cocaine he sold to the confidential informant. (Docket # 47-1 at 4.) In his affidavit, McCoy asserts that "this statement was presented in a wrong and incorrect portrayal of events and in a intentionally **misleading** order to **trick** and **deceive** the original Court and this Court." (McCoy Aff. at 12 (emphasis in original).) McCoy, however, does not deny that Johnson told the arresting officers that McCoy was the source of the cocaine he was selling, though he characterizes Johnson's statement as somehow "unreliable." (McCoy Aff. at 14.)

---

[3] *See Overly v. KeyBank Nat'l Ass'n*, 662 F.3d 856, 864 (7th Cir. 2011) ("[R]eliance on speculation is not enough to get the case to a jury.").

According to the Defendants, after being advised of his *Miranda* warnings, McCoy told officers that he supplied Johnson with the cocaine for the transaction and that he had cocaine at his residence, 415 Pasadena Avenue. (Docket # 47-1 at 8-9.) McCoy "disputes the Defendants' fact that he was advised of his Miranda warnings, and told officers that he supplied Johnson with the cocaine for the transaction and that he currently had cocaine at his residence." (McCoy Aff. at 16-17.) McCoy presented this argument to the state trial court in a motion to suppress, in which he "contend[ed] that he was not advised of his *Miranda* rights and he did not admit to there being cocaine at this residence." (Docket # 47-4 at ¶ 4.) The trial court denied the motion to suppress (Docket # 47-4 at 13), implicitly finding that McCoy was read his *Miranda* rights and that his statement and the evidence gathered as a result of the search of his home were admissible.

Detective Engelman obtained a warrant to search McCoy's residence for evidence of drug activity, including cocaine and its derivatives. (Engelman Aff. ¶ 10.) This search warrant was executed on March 26, 2010, and the officers conducting the search found 528.3 grams of cocaine in McCoy's home. (Engelman Aff. ¶ 11.)

McCoy was charged with drug offenses as a result of these events. As discussed above, his counsel filed a motion to suppress evidence obtained pursuant to the search warrant, arguing that the issuance of the search warrant was based upon false statements by Detective Engelman that McCoy had been advised of his *Miranda* rights and had admitted to having cocaine at his residence. (Docket # 47-4 at 11.) The trial court denied McCoy's Motion to Suppress (Docket # 47-4 at 7) as well as his motion to reconsider the denial of his motion to suppress (Docket # 47-4 at 13). McCoy then pled guilty to dealing in cocaine or narcotic drug (Docket # 47-4 at 9-10) and is presently serving his sentence for that conviction. McCoy does not suggest that any

portion of his conviction has been overturned or set aside.

### III. MOTIONS FOR SUMMARY JUDGMENT

#### *A. Standard of Review*

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.* The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 507 (7th Cir. 2010) (quoting *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994)). If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770. A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true," as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771.

When considering cross-motions for summary judgment, courts "look to the burden of proof that each party would bear on an issue of trial . . . [and] then require that party to go beyond the pleadings and affirmatively to establish a genuine issue of material fact." *M.O. v. Ind. Dep't of Educ.*, 635 F. Supp. 2d 847, 850 (N.D. Ind. 2009) (quoting *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)). "The contention of one party that there are no issues of material fact sufficient to prevent the entry of judgment in its favor does not bar that party from

asserting that there are issues of material fact sufficient to prevent the entry of judgment as a matter of law against it." *Id.* (citation omitted); *see Zook v. Brown*, 748 F.2d 1161, 1166 (7th Cir. 1984). "It is true that cross-motions for summary judgment do not waive the right to a trial, but this rule does not alter the respective burdens on cross-motions for summary judgment . . . . The motions are treated separately." *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 504 n.4 (7th Cir. 2008) (internal citations omitted); *M.O.*, 635 F. Supp. 2d at 850.

### B. The Plaintiff's Motion for Summary Judgment

In his motion for summary judgment, McCoy argues that the "defendant officers . . . did knowingly and willingly, act and conspire to injure, damage, harm, and deprive Plaintiff of Equal Protection of the Law, violate his civil rights under . . . Amendments Four and Fourteenth [sic], and to violate his rights secured under Indiana State" law. (Docket # 138 at 1.) Most of McCoy's motion for summary judgment, and large portions of his supporting affidavit (Docket # 139), are actually a response to the Defendants' summary judgment motion. But he also asserts that the facts establish that "there was insufficient probable cause to [lawfully] arrest the plaintiff" (Docket # 138 at 9) and that "the probable cause affidavit contained wrong and clearly misleading information" (Docket # 138 at 10).

Summary judgment is not the procedure to determine which facts are true: the Court must accept the nonmoving party's version of events as true and "extract all reasonable inferences from the evidence in the light most favorable to the nonmoving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also McGinn v. Burlington N. R.R. Co.*, 102 F.3d 295, 298 (7th Cir. 1996). When material facts are in dispute, the case must go to trial. *Bell v. Irwin*, 321 F.3d 637, 640 (7th Cir. 2003). Because McCoy is the moving

party, for the purposes of reviewing his motion for summary judgment, the Court must construe all facts in the light most favorable to the Defendants as the nonmoving party and draw all reasonable inferences in their favor.

In his affidavit, McCoy states that he committed no crime, that he was not involved in any drug deals conducted by Johnson, that the Defendants did not have probable cause to search his home or arrest him, that during questioning he was not advised of his *Miranda* rights and did not admit that he supplied Johnson with cocaine, and that Detective Engleman obtained the search warrant based on false statements. The Defendants' submissions, consisting of affidavits and other materials, rebut McCoy's version of events, and because the Defendants are the nonmoving party for the purpose of evaluating McCoy's motion for summary judgment, the Court must deny McCoy's motion for summary judgment.

### C. The Defendants' Motion for Summary Judgment

1. The *Heck v. Humphrey* doctrine bars McCoy's illegal search and seizure claim

In their summary judgment motion, the Defendants assert that McCoy's § 1983 claims are barred by the *Heck v. Humphrey* doctrine, which provides that if the remedy sought under § 1983 would require a finding or judgment that would render a conviction or sentence invalid, a plaintiff must first prove that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-487.

In response, McCoy argues that his Fourth Amendment claims would not invalidate his conviction if successful and that a criminal conviction does not bar civil search and seizure and unlawful arrest claims. McCoy essentially asserts that the *Heck* doctrine does not apply here

because a plaintiff can have a wrongful arrest or illegal search claim even though he was validly convicted. The Defendants concede that this may be true in some cases, *see Simpson v. Rowan*, 73 F.3d 134, 136 (7th Cir. 1995) (holding that *Heck* did not bar plaintiff's illegal search and improper arrest claims "because neither claim, if successful, would *necessarily* undermine the validity of his conviction" (emphasis in original)), but argue that it is not so here because the crux of McCoy's claim is that the officers fabricated the evidence against him and made false statements in the search warrant and probable cause affidavits, and if this Court concludes that McCoy's claims are true, the evidence gathered from the search should have been inadmissible, undermining his conviction. (Docket # 144 at 2-3.)

McCoy argues that his complaint "does not challenge the evidence used to support his arrest and then the subsequent search of his home later on the same day, nor does the action challenge plaintiff's conviction." (Docket # 138 at 6.) However, McCoy also states that his § 1983 action seeks damages for "direct injury caused by an illegal/unlawful arrest and search . . ." (Docket # 138 at 6.) McCoy insists that he is not challenging the validity of his conviction and instead merely seeks monetary damages, which were unavailable to him in his state court criminal proceeding. (Docket # 138 at 6.) But an award of monetary damages to McCoy because the search warrant was obtained under false circumstances would be precluded under *Heck* if the damage award would necessarily undermine the validity of his criminal conviction.

McCoy claims that the search warrant for his home was invalid because Detective Engelman did not read him his *Miranda* warnings before he stated that there were drugs in his home. If that allegation is true, the evidence uncovered as a result of the search of McCoy's home would have been inadmissible, which would undermine the validity of his conviction.

Accordingly, the *Heck* doctrine bars McCoy's federal claims related to obtaining the search warrant and the search of his home, and this Court will grant the Defendants' summary judgment on all claims relating to the search of McCoy's home. *Heck* requires that McCoy first obtain a finding or judgment setting aside his conviction before he may seek damages for being wrongfully convicted because of evidence obtained as a result of an invalid search warrant. *See Heck*, 514 U.S. at 487 (noting that when a state prisoner seeks damages in a § 1983 suit, if a judgment in the plaintiff's favor would necessarily imply the invalidity of his conviction or sentence, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated).

In addition to his Fourth Amendment search and seizure claim, McCoy also alleges that Defendants Engelman, Gigli, and Theurer arrested him without probable cause. The Defendants argue that the *Heck* doctrine entitles them to summary judgment on the false arrest claims as well as the search and seizure claims. But because a finding that a person was arrested in violation of the Fourth Amendment generally does not require a finding or judgment that would render a conviction or sentence invalid, *Heck* does not necessarily bar a false arrest claim. *Booker v. Ward*, 94 F.3d 1052, 1056 (7th Cir. 1996) ("[O]ne can have a successful wrongful arrest claim and still have a perfectly valid conviction"); *Simpson*, 73 F.3d at 136. As a finding that McCoy was falsely arrested would not necessarily undermine his conviction, the *Heck* doctrine does not bar his false arrest claims. Accordingly, the Court will not grant Defendants Engelman, Gigli, and Theurer summary judgment on McCoy's false arrest claims based on the *Heck* doctrine.

2.     The collateral estoppel doctrine also bars McCoy's illegal search and seizure claim

The Defendants also argue that the collateral estoppel doctrine bars McCoy's § 1983

claims. "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (citing *Montana v. United States*, 440 U.S. 147, 153 (1979)).

To determine the collateral estoppel effect of a state court ruling in a later federal court case, the state's law of collateral estoppel should be applied. *See Best v. City of Portland*, 554 F.3d 698, 701 (7th Cir. 2009). Under Indiana law, collateral estoppel "bars subsequent litigation of an issue necessarily adjudicated in a former suit if the same issue is presented in the subsequent suit." *Id.* (internal quotation marks and citations omitted) (quoting *Bourbon Mini-Mart, Inc. v. Gast Fuel & Servs., Inc.*, 783 N.E.2d 253, 257 (Ind. 2003)). Collateral estoppel further requires a "final judgment on the merits" in the first suit. *Id.* (quoting *Sweeney v. State*, 704 N.E.2d 86, 94 (Ind. 1998)). Furthermore, "a prime consideration . . . is whether the party against whom the prior judgment is asserted has a 'full and fair opportunity to litigate the issue and whether it would be otherwise unfair under the circumstances to permit the use of collateral estoppel.'" *Shell Oil Co. v. Meyer*, 705 N.E.2d 962, 969 (Ind. 1998) (quoting *Sullivan v. Am. Cas. Co.*, 605 N.E.2d 134, 138 (Ind. 1992)).

McCoy had a full and fair opportunity to litigate the constitutionality of the evidence against him in his criminal case, where he was represented by counsel. His motion to suppress contested the validity of his admission to officers that he had drugs in his home and sought to exclude the cocaine and other evidence taken from his bedroom. (Docket # 47-4 at 11 ¶¶ 3-6.) In his motion to suppress, McCoy argued that Detective Engelman obtained the search warrant through the use of false statements—the same argument he is making now.

In his response to the Defendants' summary judgment motion/cross-motion for summary judgment, McCoy argues that collateral estoppel does not bar his federal claims because he is not challenging the evidence against him from his criminal case, but is instead seeking damages for violations of his civil rights. (Docket # 137 at 19.) McCoy argues that because he could not litigate the issue of damages in state court, he is not litigating the same issue in this case as he did in state court. (Docket # 138 at 20.)

Before damages can be awarded in this case, however, McCoy must first prevail on his argument that the search of his home violated the Fourth Amendment. McCoy contested the validity of the search warrant in his criminal case by way of a motion to suppress and lost. That he now seeks a different remedy—money damages—that would have been unavailable in state court does not change the fact that the legal issue here is the same issue that was resolved against McCoy in state court. *Rooding v. Peters*, 864 F. Supp. 732, 736-37 (N.D. Ill. 1994) (finding that, because the legal issue was the same, collateral estoppel applied even though the plaintiff was seeking monetary and injunctive relief whereas before he was seeking his release). Therefore, the Allen Superior Court's determination that the search and seizure conducted by the Defendants in this case on March 26, 2010, was valid under the Fourth Amendment precludes McCoy from seeking to relitigate his claim that the search of his home and the seizure of the drugs found there violated the Fourth Amendment. Accordingly, the Defendants are entitled to summary judgment on all § 1983 unreasonable search and seizure claims.

Although the Defendants also assert that the Allen Superior Court's denial of his motion to suppress precludes McCoy's false arrest claim, the validity of his arrest was not contested in the motion to suppress, and, therefore, collateral estoppel does not bar that claim.

3.      Probable cause existed for McCoy's arrest

Although *Heck* and collateral estoppel do not bar McCoy's false arrest claim, the

Defendants nevertheless assert that probable cause existed for his arrest and that this precludes

any such § 1983 claim.

McCoy alleges that Engelman, Gigli, and Theurer arrested him at the scene of a drug buy

on March 26, 2010, without probable cause.  A false arrest claim—asserting an arrest without

probable cause—implicates the Fourth Amendment. *See Booker*, 94 F.3d at 1057.  "Strictly

speaking, a claim for false arrest is a claim for the harm of being unlawfully imprisoned through

some extrajudicial act that does not amount to legal process, for example, when a police officer

performs a warrantless arrest without probable cause." *Snodderly v. R.U.F.F. Drug Enforcement*

*Task Force,* 239 F.3d 892, 899 n. 9 (7th Cir. 2001) (citing *Porterfield v. Lott*, 156 F.3d 563, 568

(4th Cir. 1998); *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 117-18 (2d Cir. 1995)).

> To succeed on his unlawful arrest claim . . . [the plaintiff] must prove that [the
> officers] arrested him without probable cause. A law enforcement officer has
> probable cause to arrest when the facts and circumstances within his knowledge and
> of which he has reasonably trustworthy information are sufficient to warrant a
> prudent person in believing that the suspect had committed or was committing an
> offense. We evaluate probable cause not on the facts as an omniscient observer
> would perceive them but on the facts as they would have appeared to a reasonable
> person in the position of the arresting officer—seeing what he saw, hearing what he
> heard.

*Booker*, 94 F.3d at 1057-58 (citations, emphasis, and quotation marks omitted).

The Defendants are correct that the existence of probable cause is an absolute bar to a

Fourth Amendment claim for false arrest. *McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009);

*Potts v. City of Lafayette, Ind*., 121 F.3d 1106, 1113 (7th Cir. 1997); *Juriss v. McGowan*, 957

F.2d 345, 349 n.1 (7th Cir. 1992) ("It is well settled that the actual existence of probable cause to

arrest precludes a § 1983 suit for false arrest."). The plaintiff bears the burden of proving the absence of probable cause. *McBride*, 576 F.3d at 706.

A police officer has probable cause to arrest an individual when "the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). Officers who have probable cause can arrest a suspect without a warrant. *Smith v. Gomez*, 550 F.3d 613, 618 (7th Cir. 2008). Probable cause does not require overwhelming evidence, only reasonably trustworthy information. *Beck v. Ohio*, 379 U.S. 89, 91 (1964).

Because the Defendants are the moving party, for the purposes of reviewing their motion for summary judgment, the Court must extract all reasonable inferences from the evidence in the light most favorable to McCoy as the nonmoving party. *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 586. At the time Engelman instructed Gigli and Theurer to arrest McCoy, he knew that on March 19, 2010, a confidential informant purchased cocaine from Johnson while McCoy accompanied him[4] and that, at the second controlled buy on March 26, 2010, McCoy drove Johnson to the meet location.[5] Nonetheless, even if this information was insufficient to establish

---

[4] While McCoy points out that there appears to be a factual dispute between Engelman's police report and his search warrant and probable cause affidavits as to whether the actual buy on March 19th took place while McCoy was present in the same vehicle (*see* McCoy Aff. at 8-9), such a discrepancy is immaterial as it is undisputed that McCoy accompanied Johnson to the location of the drug deal.

[5] The Defendants suggest that Johnson's statement to the arresting officers that McCoy had provided him with the drugs he sold to the confidential informant also provides probable cause to arrest McCoy. But it appears that Johnson's statement implicating McCoy was not made until after both Johnson and McCoy had already been arrested. Moreover, according to Officer Gigli's Amended Affidavit, he did not see the bag of white powder in plain view on the floor of McCoy's vehicle until he conducted an inventory search *after* McCoy was arrested. (Gigli Am. Aff. ¶ 8.) As such, Johnson's statement implicating McCoy and the presence of the white powder, later determined to be cocaine, are immaterial to the probable cause determination. *See Reed*, 443 F.3d at 603.

that probable cause existed to arrest McCoy on charges of dealing cocaine, an officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). Rather,"an arrest is reasonable under the Fourth Amendment so long as there is probable cause to believe that some criminal offense has been or is being committed, even if it is not the crime with which the officers initially charge the suspect." *McComas v. Brickley*, 673 F.3d 722, 727 (7th Cir. 2012) (internal quotations and citation omitted). As such, "[a]ctual existence of *any* probable cause to arrest precludes a § 1983 suit for false arrest." *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 762 (7th Cir. 2006) (emphasis in original).

Here, there was probable cause to believe that McCoy violated Ind. Code § 35-41-2-4 by knowingly or intentionally aiding, inducing, or causing Johnson to deal cocaine.[6] While mere presence at the scene of the crime is insufficient to establish accomplice culpability, presence may be considered along with other factors, including the defendant's relation to or companionship with the one engaged in the crime and the defendant's actions before, during, and after the commission of the crime. *Alvies v. State*, 905 N.E.2d 57, 61 (Ind. Ct. App. 2009); *Laney v. State*, 868 N.E.2d 561, 567 (Ind. Ct. App. 2007). In that regard, McCoy not only accompanied Johnson to the controlled buy on March 26th, but drove the vehicle in which they arrived at the meet site; moreover, he had previously accompanied Johnson to the first controlled buy on March 19th, all of which Engelman had personally observed. As such, to a reasonable person in Engelman's position, it would appear as though McCoy aided Johnson in committing the crime by accompanying him to the first buy—acting as a lookout perhaps, or the drug supplier—and

---

[6] Indeed, according to his probable cause affidavit, Engelman believed he had probable cause to arrest McCoy for both dealing cocaine and aiding the dealing of cocaine. (Docket # 47-1 at 4.)

driving him to the second.

Therefore, even though McCoy did not physically deliver the drugs, he accompanied Johnson, who appeared to be the dealer, to two controlled drug buys and actually drove him to the second one, leading a reasonable person in Engelman's position to believe that McCoy was knowingly or intentionally aiding or inducing the dealing of cocaine. *See Kyles v. State*, 391 N.E.2d 642, 645 (Ind. Ct. App. 1979) (finding that evidence that the defendant drove the car and patiently waited while his companion made three trips into a residence, each time bringing stereo equipment back to the car, was sufficient to support a reasonable inference that defendant had knowledge of and participated in committing burglary of a dwelling); *see also Crocker v. State*, 563 N.E.2d 617, 622 (Ind. Ct. App. 1990) (holding that a middleman could still be convicted of delivering marijuana if he was knowingly or intentionally aiding the dealer in delivering the marijuana). Importantly, in *Kyles* and *Crocker*, the court found that this evidence was sufficient to convict the defendants of aiding and inducing; here, the question is whether probable cause existed to arrest McCoy for aiding and abetting. While probable cause requires more than a bare suspicion of criminal activity, "it does not require evidence sufficient to support a conviction." *Holmes v. Vill. of Hoffman Estate*, 511 F.3d 673, 679 (7th Cir. 2007) (citation omitted).

Furthermore, in the context of drug deals, the Seventh Circuit Court of Appeals has stated that "[i]t strikes us as incredible that [a drug dealer] would have a person accompany him to a drug deal . . . where the person did not have the [drug dealer's] utmost trust and confidence." *United States v. Rodriguez*, 975 F.2d 404, 412 (7th Cir. 1992) (quoting *United States v. Perry*, 747 F.2d 1165, 1169 (7th Cir. 1984)). Relying on this language, it has also held that a defendant's presence and close proximity to multiple drug transactions, where he was present in

the immediate area and strategically situated himself in a location where he could observe the exchanges, gave "great credence to the belief that he was trusted by his co-defendant and was in a position to assist him if necessary," providing sufficient evidence for a reasonable jury to conclude that the defendant was there to serve as a "lookout" and to see that the drug deals were successfully completed and justifying the logical inference that the defendant was an active participant in a drug conspiracy. *United States v. Sasson*, 62 F.3d 874, 887 (7th Cir. 1995).

As regards probable cause, while "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause," *United States v. Carpenter*, 342 F.3d 812, 815 (7th Cir. 2003) (quoting *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979)), courts have found sufficient probable cause when a person's presence at a drug buy is also combined with some other indicator of involvement, such as serving as a lookout or driver. *See United States v. Burrell*, 963 F.2d 976, 991 (7th Cir. 1992) (finding probable cause to arrest the driver of a vehicle that arrived from Chicago shortly after a Chicago drug dealer and that parked in a nearby gas station from which the driver could observe the controlled drug buy, where dealer had previously told undercover officer that he would be arriving with protection from Chicago and where the driver and companion repeatedly scanned parking lot at which the drug buy was underway); *United States v. Sayles*, No. 11-CR-30162-WDS-1, 2012 WL 1297836, at *3 (S.D. Ill. Apr. 16, 2012) (finding probable cause for the defendant's arrest when the officers witnessed his presence at the scene of four controlled drug transactions, where, in the course of each transaction, a confidential source contacted a co-defendant, who met with the defendant before and after the delivery of drugs, and when the officers identified the defendant as the driver of the van after the first buy and at the following three controlled purchases);

*United States v. Cruz*, No. 08 CR 625, 2009 WL 1382532, at *3 (N.D. Ill. May 13, 2009)

(finding probable cause to arrest two co-defendants who were present at the scene of a controlled

purchase when a suspect had arranged to purchase cocaine from a confidential source, arrived at

the location with one of the co-defendants while the second was in a separate car in a nearby

parking lot, and the two co-defendants ultimately fled the scene in the second car when the

police arrived). Moreover, an individual's presence at more than one drug deal suggests that he

was not just "passing through while a drug deal went down around him." *Sasson*, 62 F.3d at 886-

87 (noting the defendant's five unexplained appearances at drug transactions in finding sufficient

evidence that he was a participant in a drug conspiracy).

Here, similar to the defendant in *Sayles*, 2012 WL 1297836, at *3, McCoy was present at

the scene of two controlled drug buys, accompanying Johnson to both, and was identified by

Engelman at the first buy and as the driver during the second buy, all of which suggest that he

was not just "passing through while a drug deal went down around him," *Sasson*, 62 F.3d at 886-

87. Furthermore, like the defendants in *Cruz*, 2009 WL 1382532, at *3, while McCoy did not

flee the scene once law enforcement arrived, he accompanied a suspected drug dealer to a

controlled buy—and did so *twice*. Furthermore, that Johnson would have McCoy accompany

him to one controlled buy—let alone two, the second of which he relied on McCoy as the

driver—lends "great credence to the belief that [McCoy] was trusted by [Johnson] and was in a

position to assist him if necessary." *Sasson*, 62 F.3d at 887. Accordingly, probable cause existed

for McCoy's arrest, entitling Engelman to summary judgment on McCoy's false arrest claim.

As for Gigli and Theurer, who arrested McCoy at Engelman's directive, under the

collective knowledge doctrine, "[t]he police who actually make the arrest need not personally

know all the facts that constitute probable cause if they reasonably are acting at the direction of another officer or police agency." *United States v. Parra*, 402 F.3d 752, 764 (7th Cir. 2005) (quoting *Tangwall v. Stuckey*, 135 F.3d 510, 517 (7th Cir. 1998)). Ordinarily then, an "arrest is proper so long as the knowledge of the officer directing the arrest, or the collective knowledge of the agency he works for, is sufficient to constitute probable cause." *Id.* (quoting *Tangwall*, 135 F.3d at 517); *accord United States v. Williams*, 627 F.3d 247, 256 (7th Cir. 2010). Therefore, since Engelman directed Gigli and Theurer to arrest McCoy and he had sufficient probable cause to believe that McCoy had committed a crime, Gigli and Theurer 's arrest of McCoy was proper. *See Parra*, 405 F.3d at 764. Accordingly, Defendants Gigli and Theurer are also entitled to summary judgment on McCoy's false arrest claim.

4.   Defendants Engelman, Gigli, and Theurer are entitled to qualified immunity

Even if, however, Detective Engelman did not have probable cause to order McCoy's arrest by Officers Gigli and Theurer, they all would be entitled to qualified immunity. The doctrine of qualified immunity shields from liability police officers who perform discretionary duties and who act in ways they reasonably believe to be lawful. *Chelios v. Heavener*, 520 F.3d 678, 690-91 (7th Cir. 2008). "The defense provides 'ample room for mistaken judgments' and protects all but the 'plainly incompetent and those who knowingly violate the law.'" *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008) (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986))). In short, qualified immunity will work as a shield if a reasonable officer could have believed McCoy's arrest to be lawful in light of clearly established law and the information Engelman, Gigli, or Theurer possessed. *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 643 (1987)); *Belcher v. Norton*, 497 F.3d 742, 749 (7th

Cir. 2007).

As the Supreme Court recently reaffirmed in *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (discussing *Saucier v. Katz*, 533 U.S. 194 (2001)), two questions are pertinent to the defense of qualified immunity: whether the alleged facts show that the state actor violated a constitutional right and whether that right was clearly established at the time of the alleged violation. Therefore, if the facts alleged show that the state actors did not violate a constitutional right, or if that right was not clearly established at the time of the alleged violation, that is enough to establish the defense of qualified immunity. *Id.* at 232-33.

### a. Detective Engelman is entitled to qualified immunity

As concluded above, Engelman had probable cause to arrest McCoy for aiding the dealing of cocaine. Nonetheless, even if Engelman did not somehow have probable cause to arrest McCoy, he would still be entitled to qualified immunity. While "[t]here is no question that [McCoy's] right to be free from arrest without probable cause was clearly established at the time of the incident," "a defendant is entitled to qualified immunity in a false-arrest case when, if there is no probable cause, 'a reasonable officer could have mistakenly believed that probable cause existed.'" *Fleming v. Livingston Cnty., Ill.*, 674 F.3d 874, 879-80 (7th Cir. 2012) (quoting *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998)). Thus, as long as Engelman reasonably, although possibly mistakenly, believed that probable cause existed to arrest McCoy, he is entitled to qualified immunity. *Id.* at 880. This standard is known as "arguable probable cause" and "is established 'when a reasonable officer in the same circumstances and with the same knowledge and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in light of well-established law.'" *Id.* (emphasis

in original) (quoting *Humphrey*, 148 F.3d at 725).

In the instant case, there was arguable probable cause. *Id.* Engelman had personally observed McCoy accompany Johnson to two controlled drug buys and drive the vehicle in which he and Johnson arrived at the second buy. Thus, Engelman was not relying on a witness's or informant's description of a suspect that seemed to match McCoy or an informant's relay of information, but on his own knowledge and observations, and McCoy was actually present at the crime scene both times, rather than merely in the vicinity, both of which strengthen the conclusion that arguable probable cause existed. *See id.* (finding arguable probable cause when the officer spotted the plaintiff, the only person in the area, in an alley way about one-half block from the crime scene and the plaintiff substantially matched the description of the intruder that one of the victims had given the officer); *Conley v. Otzelberger*, No. 10-C-00250, 2012 WL 946879, at *3 (E.D. Wis. Mar. 19, 2012) (holding that a reasonable officer could still believe that a general vehicle description, a physical description, and time and location communicated for the drug delivery were adequate to justify an arrest, especially because the officers partially corroborated the planned transaction by listening to their informant's phone call to the plaintiff).

It is undisputed that McCoy was present at the controlled buys on both occasions and was driving Johnson to the second buy. From this, a reasonable officer in Engelman's position could have inferred that McCoy was more deeply involved than a mere bystander. Accordingly, a reasonable officer in the same circumstances and with the same knowledge and possessing the same knowledge as Engelman *could* have reasonably believed that probable cause existed to arrest McCoy for aiding in the dealing of cocaine in violation of Ind. Code § 35-41-2-4, thereby entitling Engelman to qualified immunity. *Fleming*, 674 F.3d at 880.

*b. Officers Gigli and Theurer are entitled to qualified immunity*

The question of qualified immunity also arises concerning McCoy's claim of false arrest against Gigli and Theurer, who arrested him on Engelman's orders. The Third Circuit Court of Appeals summarized the law as follows:

> The legality of a seizure based solely on statements issued by fellow officers depends on whether the officers who *issued* the statements possessed the requisite basis to seize the suspect. Moreover, an officer can lawfully act solely on the basis of statements issued by fellow officers if the officers issuing the statements possessed the facts and circumstances necessary to support a finding of the requisite basis.

*Rogers v. Powell*, 120 F.3d 446, 453 (3d Cir. 1997) (emphasis in original; internal citations omitted) (citing *United States v. Hensley*, 469 U.S. 221, 231 (1985)). Furthermore, "where a police officer makes an arrest on the basis of oral statements by fellow officers, an officer will be entitled to qualified immunity from liability in a civil rights suit for unlawful arrest provided it was objectively reasonable for him to believe, on the basis of the statements, that probable cause for the arrest existed." *Duran v. Sirgedas*, 240 F. App'x 104, 115 (7th Cir. 2007) (unpublished) (quoting *Rogers*, 120 F.3d at 455). The question therefore becomes whether it was objectively reasonable for Gigli and Theurer to rely on Engelman's directive as a basis for believing that probable cause existed for McCoy's arrest. *Id.*

Turning to that issue, Engelman appeared to have more knowledge of McCoy's involvement with Johnson than Gigli or Theurer. He had personally observed McCoy accompany Johnson to the March 19th controlled buy and then presumably recognized McCoy as the driver of the vehicle as he and Johnson arrived at the meet site on March 26, 2010 (*see* Docket # 47-1 at 8). Before this second buy, Engelman briefed Gigli and Theurer on the narcotics investigation and how he had previously used a confidential informant to purchase

cocaine from Johnson (Gigli Am. Aff. ¶ 2; Theurer Am. Aff. ¶ 2), though it is unclear whether Engelman told them of McCoy's presence during the first controlled buy. Thus, when Engelman ordered Gigli and Theurer to arrest McCoy, it was objectively reasonable for them to believe that, with Engelman's knowledge and personal involvement in the prior controlled buy and associated narcotics investigation, there was probable cause to do so. *See Duran*, 240 F. App'x at 115. Moreover, since McCoy and Johnson were inside their vehicle and could easily drive away, Gigli and Theurer had no time to reflect or make further inquiries concerning the existence of probable cause if they were expected to apprehend McCoy. *Id.*

Accordingly, because it was objectively reasonable for Gigli and Theurer to believe that probable cause existed for McCoy's arrest, they are also entitled to qualified immunity.

5.     Supplemental state law claims

In his complaint, McCoy presents federal claims and supplemental state law claims arising from the Defendants' actions. Pursuant to 28 U.S.C. § 1367, unless provided otherwise by statute, federal courts "have supplemental jurisdiction over all other claims that are so related to claims in the action . . . that they form part of the same case or controversy." But when a district court dismisses all federal claims, it has broad discretion to refuse to exercise jurisdiction over remaining supplemental state claims. *Szumny v. Am. Gen. Fin. Inc.*, 246 F.3d 1065, 1073 (7th Cir. 2001); *Kennedy v. Schoenberg, Fisher & Newman Ltd.*, 140 F.3d 716, 727 (7th Cir. 1998). As this Court has concluded that the Defendants are entitled to summary judgment in their favor on all of McCoy's federal claims, it declines to exercise supplemental jurisdiction in this action and will dismiss McCoy's state law claims without prejudice to his right to refile those claims in state court.

### IV.  CONCLUSION

For the foregoing reasons, the Court DENIES the Plaintiff's motion for summary judgment (Docket # 138), GRANTS the Defendants' motion for summary judgment (Docket # 46), and DIRECTS the Clerk to enter judgment in favor of the Defendants and against the Plaintiff.  The Plaintiff's supplemental state law claims are DISMISSED without prejudice to his right to refile those claims in state court.  The numerous pending motions concerning discovery and other matters (Docket # 86, 97, 98, 102, 105, 110) are DENIED as MOOT.

SO ORDERED.

Entered this 15th day of May, 2012.

/S/ Roger B. Cosbey
Roger B. Cosbey
United States Magistrate Judge